**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GEORGENA NEWSOME,

        Plaintiff,

                              Case No. 3:17-cv-527-J-34PDB

vs.

DOLGENCORP, LLC dba DOLLAR
GENERAL,

        Defendant.

_____/

# O R D E R

    **THIS CAUSE** is before the Court on Defendant Dolgencorp, LLC's Motion for Summary Judgment, Statement of Undisputed Material Facts, and Memorandum of Law in Support (Doc. 18; Motion), filed on March 30, 2018. Plaintiff filed a response in opposition to the Motion on April 27, 2018. See Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 23; Response). In addition, on May 7, 2018, Defendant filed Defendant's Motion to Strike Portions of Plaintiff's Statement of Disputed Facts (Doc. 24; Motion to Strike). Plaintiff filed Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Portions of Plaintiff's Statements of Disputed Facts (Doc. 28; Response to Motion to Strike) on May 29, 2018.[1]

Accordingly, this matter is ripe for review.

---

[1]     Upon review, the Court determines that the Motion to Strike is due to be denied because it is procedurally improper. See Polite v. Dougherty Cnty. Sch. Sys., 314 F. App'x 180, 184 n.7 (11th Cir. 2008) (finding no error in the district court's denial of a motion to strike an affidavit because "motions to strike are only appropriately addressed towards matters contained in the pleadings; here, the affidavit was submitted as part of the motion for summary judgment, which is not a pleading"); Mobile Shelter Sys. USA, Inc. v. Grate Pallet Solutions, LLC, 845 F. Supp. 2d 1241, 1252-53 (M.D. Fla. 2012). However, to the extent Defendant argues in the Motion to Strike that several of the contentions made in Plaintiff's Response are not properly supported by admissible evidence as required by Rule 56(c), Federal Rules of Civil Procedure, the Court construes these arguments as evidentiary objections and will consider them, where necessary, in its analysis

## I.    Background[2]

Plaintiff Georgena Newsome is a Jehovah's Witness who attends religious services on Sunday mornings.  See Motion, Ex. 1: Deposition of Georgena Newsome (Doc. 18-1; Newsome Dep.) at 13-14.   In August 2014, Defendant Dolgencorp, LLC d/b/a Dollar General (Dollar General) hired Plaintiff to work as a cashier at the Dollar General store in Jasper, FL.  See Newsome Dep. at 25, 29-30; Defendant's Answer and Affirmative Defenses (Doc. 5; Answer) ¶ 3.  Plaintiff had applied for the position by filling out an application on a computer.  See Newsome Dep. at 22.  On this application, under each day of the week, Plaintiff indicated that she was available to work "Any" hours.  See Newsome Dep. at 21-23; Motion, Ex. 2 at 1 (Application for Employment).   After submitting this Application for Employment, the store manager, Lisa Tillerson, contacted Newsome.  See Newsome Dep. at 24.  Tillerson offered Newsome the job and had her complete additional paperwork.  Id.  In this additional paperwork, Newsome indicated that she was not available to work on Sundays.  See id. at 25, 57, 74-75.  Newsome began work at the Dollar General on Thursday, September 11, 2014.  See Answer ¶ 3; see also Motion, Ex. 2 at 12.  According to Dollar General's records, Newsome worked that Sunday, September 14th, and the two following Sundays as well.  See Motion, Ex. 2 at 12.  Each of those shifts started at 4:00 p.m. or later.  Id.

---

of the Motion for Summary Judgment.  See Addison v. Ingles Mkts., Inc., No. 3:11-CV-3 (CAR), 2012 WL 3600844, at *1-2 (M.D. Ga. Aug. 21, 2012); see also Rule 56(c)(2), 2009 advisory committee note ("There is no need to make a separate motion to strike.").

[2]    As discussed infra, for the purposes of resolving Defendant's Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Plaintiff.  The Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

On November 29, 2014, Newsome received a promotion to Lead Sales Associate, a position she refers to as a keyholder.  See Motion, Ex. 2 at 3; Newsome Dep. at 30, 33-34.  After she became a keyholder, Newsome worked mostly at night as a closing manager. See Newsome Dep. at 30.  She typically would work from 4:00 p.m. to closing at 10:00 p.m. Id. at 31.  Newsome estimates that a total of approximately nine employees worked at the Dollar General store.  Id.  Four or five people would work the morning shift, two managers, a cashier, and a stocking person, and two people would work the evening shift, a cashier and a keyholder, typically Newsome.  Id. at 31-32.  Following her promotion to keyholder, Newsome worked the closing shift the next six Sundays in a row.  See Motion, Ex. 2 at 12-13.

On February 23, 2015, Tillerson met with Newsome to discuss her failure to comply with the required store closing procedures.  See Newsome Dep. at 35-36; Motion, Ex. 2 at 4.  According to the Dollar General Progressive Counseling Form concerning the incident, Newsome engaged in the following "Substandard Performance" pertaining to closing procedures:

> On the night of 2-17 MOD[3] did not follow closing procedures.  Was in office @ 9:30 counting money with door open.  [L]eft the safe door open, left money on desk with open door, started time lock safe before closing.  Also failed to persent [sic] before leaving store.  [F]ailure to protect.

See Motion, Ex. 2 at 4.  The Form includes an "Action Plan to Correct Unacceptable Performance, Conduct or Attendance" which instructs:

> -No one in office last hour we are open
> -When counting cash office door is to be closed & locked.
> -Safe is not supposed to be left open
> -time lock safe is not suppose[d] to be done till doors are secure.

---

[3] The record does not define "MOD" which presumably refers to the "Manager on Duty."  But, regardless, there is no dispute that Newsome is the individual who was disciplined for failing to follow closing procedures on the night of February 17, 2015.

-present bags when leaving
-Failure to execute to [indecipherable] standard of closing the store will result in further disaplinary [sic] actions up to and including termination.

Id. On the bottom of the Form, Newsome commented that: "I was doing what I was talked [sic] to do. Now I just know what to do now. Sorry." Id. According to Newsome, Tillerson explained that "she [Tillerson] basically had got wrote up for not following Dollar General's policy and procedures, and that basically how I was trained was wrong, and these are the things that basically need to get changed. This is how I was taught doing it. That is why I apologized in my comments." See Newsome Dep. at 36. Newsome states that it was Tillerson who had initially trained her, and that she had gotten "so used to doing it like that," with the door open, "because that's how they trained me, . . . And that way I can also keep here and keep an eye on my one cashier that I have at nighttime, instead of being closed up." Id. at 37. Nevertheless, Newsome acknowledged that during the meeting on the Progressive Counseling Form, Tillerson told her that "the [office] door have [sic] to be closed while I count money, and that the double doors have to be locked before counting the money now." Id.

At some point during her employment, although the record does not indicate precisely when, Newsome asked Tillerson if she could have Sundays off, or at least alternate who worked on Sundays. See id. at 56-57, 64. The first conversation Newsome specifically recalls with Tillerson about her Sunday work schedule occurred in late March or early April 2015. Id. at 55-56, 64. In that conversation, Newsome had asked Tillerson about sharing Sundays by alternating who worked, id. at 57, 64, and told Tillerson that she wanted to attend church, id. at 82-83.[4] According to Newsome, Tillerson told her that "she

---

[4] Assistant manager, Ella Strickland, also recalls Newsome telling Tillerson that she attended church every Sunday. See Response, Ex. 3: Deposition of Ella Strickland (Doc. 22-3; Strickland Dep.) at 6, 17.

need me because of the fact that two ladies got fired, and both of them was key holders. And she needed me to close every night. I told her, 'Fine.' She told me she was getting a key holder. Once she get the key holder, I could stop working on Sundays." Id. at 57; see also id. at 56 ("[S]he come to me, let me know that she needs me, and I do it because she's my GM, and if she tell me she needs me for the store, I do it."). When Newsome was still scheduled to work Sundays after another person was hired, she went to Tillerson again, but nothing changed.[5] Id.

At that point, around May 3, 2015, Newsome decided to call the Dollar General corporate Employee Response Center (ERC) to complain about being over-worked.[6] Id.

---

According to Strickland, Tillerson told Newsome that Sundays were Tillerson's day off and Newsome would have to work Sundays if she was scheduled. Id. Strickland does not remember when this conversation took place. Id. at 18. Strickland also recalls Tillerson telling her, Strickland, that she would not give Newsome Sundays off because Sundays were Tillerson's day off. Id. at 10. Although Strickland offered to cover Newsome's shift on Sundays, Tillerson said that Strickland "was not going to work open to close on Sundays," because "it was too many hours a day," and "[Tillerson] wasn't working Sundays, so [Newsome] would have to." Id. at 11. According to Strickland, another key holder, Natasha Wax, also worked for Dollar General at that time, but Strickland does not know if she ever worked on Sundays. Id. at 11-12.

[5]     Newsome also testified that she talked to the District Manager, Mike Thomas, "at the beginning" about Tillerson refusing to alternate Sundays with her, and then "[Tillerson] went to alternating. . . . And then it went to me working two or three Sundays and then being off a Sunday, you know, something like that, after the fact." Id. at 102. It is entirely unclear when this conversation took place, but the Court notes that the only period of time when Newsome consistently worked alternating Sundays was in March of 2015. See Motion, Ex. 2 at 12-16.

[6]     "Around" this same time, Tillerson counseled a group of employees, including Newsome, regarding misuse of the daily logbook where employees record tasks that need to be accomplished in the store. Id. at 43-44, 46. Newsome refused to sign the counseling form on that occasion because "the book didn't really have nothing to do with me." Id. at 44. Newsome explains that it is the employees on the morning shift who fill out the logbook, and all Newsome does "is basically mark out what I done did, you know, what I accomplished for that night." Id. at 44-45. On that same occasion, Tillerson counseled Newsome regarding a separate incident where Newsome failed to finish putting away "three buggies of go-backs" that Tillerson had gathered and asked Newsome to return to the shelf. Id. at 47. According to Newsome, these two incidents occurred "around the time that I called in on [Tillerson], and she basically just write me up for no reason. That's how I feel." Id. at 46. Newsome then called the district manager, Mike Thomas, to complain about Tillerson. Id. at 101. Because neither party submitted the counseling forms from these two incidents, it is entirely unclear from the record when the counseling occurred. However, both parties appear to agree that the counseling occurred after the February incident regarding closing procedures, but before Plaintiff called the ERC. See Response at 3; Motion to Strike at 4.

at 49-50, 52-54; see also Motion, Ex. 2 at 8.  In its records, Dollar General summarized the call as follows:

> LSA, Georgena who works the night shift wants to let us know about the staffing problem at store when there are no stockers.  Therefore, she needed to do this almost every night.  further to do recovery but then she is expected to come in earlier to be doing ten rolltainers which should have been done by the morning shift employees.  She stated she has been doing the best she can.  However she feels being over worked. Fortunately newly hired stocker, Samantha only started last Saturday, 2nd of May.  She got wind of information that the DM, Mike had instructed the SM, Lisa to close store at least once a week when in fact should be twice a week, however SM has never done this.  She knows the store has been doing down and she may expect her store hours to be cut by the SM once receives information about complaint.  She provided her cell phone # . . . .

See Motion, Ex. 2 at 8.  Newsome does not recall relaying her concerns "like they said it," but she does recall "letting them know" that Tillerson "need[ed] to hire some more people to stock," and Newsome needed help to do the "rolltainers," as well as help "when there's only two people on the shift and [she] still [has] to look out for [her] cashier."  See Newsome Dep. at 50-52.  Although not documented in Dollar General's records, Newsome also recalls complaining about working on Sundays during this call.  See id. at 55.  When asked during her deposition what she reported regarding Sundays, Newsome responded: "I let them know that I was informed that a manager, a GM, supposed to work at—close up the building at night, too.  And I let them know that she has not been doing that, that I'm the only one that been closing up at night."  Id.  Newsome testified that after her call to the ERC she received a call back from someone who let her know that:

> the general manager supposed to close their stores, too.  And I stated to them that she never closed the store.  And basically they told me that she will be closing from this point on and also work with me on my Sundays, too.  I have every other Sunday off.  Like, we'll share Sundays.

Id. at 54; 57-58. In addition, the person Newsome spoke with cautioned her that when Tillerson finds out about Newsome's complaint she may retaliate by cutting Newsome's hours, and advised Newsome that if that happens, she should call back and report the retaliation. Id. at 54-55, 57-58.

Approximately a week after this call, Newsome spoke with Tillerson again at which time: "Tillerson asked [Newsome] about the Sundays, that basically [they were] going to— [Tillerson] was going to start closing up, and she had to start working some Sundays. And [Newsome] told her, 'Okay, I agree to that.'" Id. at 59-60. According to Newsome, this arrangement of alternating Sundays only lasted a few weeks until it went back to Newsome working on Sundays. Id. at 55-56, 60. However, this testimony is inconsistent with Dollar General's employment records which show that after she called the ERC, Newsome worked the next six Sundays in a row. See Motion, Ex. 2 at 15-16. Notably, in a different portion of her deposition, Newsome testified that: "[w]hen I went to her the second time, after the fact that I had called in on her, she basically told me that she's short on staff and if [Newsome] can't work a Sunday, then she either going to have to step me down or she don't need me." Id. at 76.[7]

---

[7] At another point in her deposition, Newsome states that the reason she had to start working Sundays again after she made the call to the ERC was "because of the fact [Tillerson] says two employees got fired at that time and she needed me. And then it results down to if I can't do it, then she has to terminate me because she need her key holder to have open availabilities." Id. at 55-56. However, she also recalls a conversation with Tillerson about two employees being fired before she called the ERC. Id. at 57. Indeed, at one point in her deposition, Newsome appears to suggest that it was the two keyholders being fired that prompted her promotion to keyholder. See id. at 103-04 ("It was [Tillerson], [Strickland], and the two key holders. The two key holders got fired. I stepped up."). It appears that after Newsome's promotion to keyholder, a new person was hired who could help with closings, but that person transferred to a different store, leaving Tillerson short-staffed again. See Newsome Dep. at 103-05. Dollar General did not hire another keyholder until a few weeks before Newsome was fired, id. at 104, and indeed, Newsome did not work the last three Sundays before she was terminated. See Motion, Ex. 2 at 16.

Just over two months after Newsome called the ERC to complain about Tillerson, on July 10, 2015, Tillerson terminated Newsome's employment with Dollar General. See id. at 60-61; see also Motion, Ex. 2 at 9-10. According to the Dollar General Progressive Counseling Form, on July 6, 2015, Newsome did not follow closing procedures. See Motion, Ex. 2 at 9. The Form states "[o]n 2-17-15 she was given a final written counseling on closing procedures. She was counting money at closing with door open and cashier sitting in office. Also failed to present her bags when leaving." Id. Newsome wrote the following response on the Form:

> I fell like this is wrong because when Mike told Lisa to write us up on the 2/17/15 about the office use after that I change my ways off doing thing told by my Store Mng Lisa. Know I'm get termination for doing what I was told to do. If I was doing something wrong as a closing mng. Why nobody told me I still was doing it wrong, that what CVT for. For the store mng. to look at it and let there people know if thay doing wrong or right. I feel like I was life out on thing's anywas. Allso, the writte up's is not the right ones because I wrote comments one them now the one's thay have do not. So I will need the vido of the day I was give the paper to sign.

Id. (spelling and grammar errors in original). Newsome does not remember whether she was counting money with the cashier in the office and the door open. See Newsome Dep. at 61-62. In Newsome's view, Tillerson retaliated against her for requesting Sundays off because after she called the ERC and talked to Tillerson "the next thing you know it's just little icky picky things, and then the next thing, you know, it's termination." Id. at 63, 78. After she was terminated, Newsome called "corporate" to report what she viewed as a retaliatory termination and was told they would review what happened. Id. at 65. Newsome never received a return call. Id.

## II.     Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[8]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.

---

[8]      Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.  Clarification of Newsome's Claims

Newsome's Complaint sets forth two counts: Count I - Religious Discrimination and Count II - Retaliation.  In the Motion, Dollar General asserts that Count I of the Complaint constitutes a claim for religious discrimination based on disparate treatment, and that Newsome did not plead a failure to accommodate claim.  See Motion at 10-11.  Indeed, in the "Religious Discrimination" Count Newsome alleges that she "has been the victim of discrimination on the basis of [her] religion in that [she] was treated differently than similarly situated employees of Defendant [who] do not share [Newsome's] religious beliefs and preferences . . . ."  See Complaint ¶ 15.  The words "failure to accommodate" do not appear anywhere in the Complaint.  See generally Complaint.  Thus, because Newsome did not "separate discrete claims of discrimination into separate counts," Dollar General argues

that she cannot add a failure to accommodate claim at this stage of the proceedings.  <u>See</u>

Motion at 11.  In her Response, Newsome contends that she need not have invoked the

precise legal theory giving rise to recovery so long as Dollar General had sufficient notice

of her claim.  <u>See</u> Response at 5.  According to Newsome, her factual allegations are

sufficient to put Dollar General on notice that "Plaintiff's religious discrimination claim is

based on Tillerson's refusal to accommodate Plaintiff's schedule as necessary for her

practice of religion."  <u>Id.</u> at 6.

In the Complaint, Newsome includes the following pertinent factual allegations:

7.   When Plaintiff filled out her job application, she stated that her availability did not include Sundays for religious purposes.
8.   Initially, her schedule requests were honored but after Plaintiff had been employed for some time, Lisa Tillerson, Store Manager, began to threaten Plaintiff by telling Plaintiff that if she could not work on Sunday then she should step down from the key position.
9.   Stepping down from the key position would have caused Plaintiff to take a substantial decrease in pay.
10.  Plaintiff called the corporate office of the Defendant and reported Tillerson's religious discrimination.
11.  Plaintiff was terminated shortly thereafter.

<u>See</u> Complaint ¶¶ 7-11.   Based on these allegations, Newsome's sole religious

discrimination claim is that Dollar General intentionally discriminated against her based on

her religious practice.  Specifically, Newsome alleges that Dollar General terminated her

because she requested not to work on Sundays for religious reasons.   Discharging

Newsome for this reason "is <u>synonymous</u> with refusing to accommodate the religious

practice.  To accuse the employer of one is to accuse him of the other."  <u>See</u> <u>E.E.O.C. v.</u>

<u>Abercrombie & Fitch Stores, Inc.</u>, 135 S. Ct. 2028, 2032 n.2 (2015).   Indeed, in

<u>Abercrombie</u>, the Supreme Court explained that "the rule for disparate-treatment claims

based on a failure to accommodate a religious practice is straightforward: An employer may

not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions." Id. at 2033. This is precisely what Newsome has alleged—that Dollar General made Newsome's religious practice requiring Sundays off a factor in its decision to terminate her employment. See Abercrombie, 135 S. Ct. at 2033. Whether Dollar General offered Newsome a reasonable accommodation or was unable to do so without undue hardship is a defense to this action that Newsome is not required to plead or prove. See Abercrombie, 135 S. Ct. at 2032 n.2 (explaining that the statute "place[s] upon the employer the burden of establishing an 'undue hardship' defense"); id. at 2036 (Alito, J., concurring) ("[A] plaintiff need not plead or prove that the employer wished to avoid making an accommodation or could have done so without undue hardship."); see also Dixon v. Hallmark Cos., 627 F.3d 849, 855 (11th Cir. 2010) ("Once a prima facie case is established, the burden shifts to the employer to 'demonstrate that he is unable to reasonably accommodate an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business.'" (quoting Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1321 (11th Cir. 2007))). Having determined that Count I of the Complaint alleges a claim of intentional religious discrimination based on the theory that Newsome was terminated due to her religious practice, the Court will next consider whether there is a genuine issue of material fact as to Newsome's religious discrimination and retaliation claims.[9]

---

[9] Dollar General's confusion is certainly understandable given that Count I is replete with conclusory allegations and legal conclusions which bear no relation to the facts as actually alleged in the Complaint. See Complaint ¶¶ 15-18 (referring to "differential treatment," "hostility" and "an abusive and offensive work environment"). Indeed, this is not the first time that counsel for Newsome has faced criticism for the vague and conclusory way in which she drafts her pleadings. See, e.g., Palmer v. Albertson's LLC, 418 F. App'x 885, 889-90 (11th Cir. 2011); Davis v. City of Lake City, Fla., No. 3:10-cv-1170-J-34TEM, 2013 WL 12091324, at *5 n.9 (M.D. Fla. Mar. 15, 2013) aff'd 553 F. App'x 881, 882 n.1 (11th Cir. 2014); Brownfield v. City of Lake City, No. 3:16-cv-1433, 2018 WL 1316233, at *1 n.3 (M.D. Fla. Mar. 14, 2018). Nevertheless, contrary to Dollar General's argument, in this case Newsome has not impermissibly combined discrete claims

## IV.    Applicable Law[10]

### A.    Religious Discrimination

Title VII provides "that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting 42 U.S.C. §§ 2000e-2(a)(1)).[11]  To establish a prima facie case of religious discrimination in a case such as this, a plaintiff must present evidence that: "(1) [she] had a bona fide religious belief that conflicted with an employment requirement; (2) [she] informed [her] employer of [her] belief; and (3) [she] was discharged for failing to comply with the conflicting employment requirement." See Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1321 (11th Cir. 2007) (quoting Beadle v. Hillsborough Cnty. Sheriff's Dep't, 29 F.3d 589, 592 n.5 (11th Cir. 1994)).  Here, Newsome contends that pursuant to her bona fide religious beliefs, she attends religious services on Sunday mornings, which conflicts with her ability to work on Sundays.  See Response at 10; Newsome Dep. at 13-14, 75-76, 87.  She also asserts that she informed Dollar General

---

of discrimination into one count, as occurred in Palmer, rather, Newsome has set forth only one claim in Count I—that she was wrongfully terminated based on her religious practice—which is sufficiently outlined by the facts of the Complaint.

[10]    Newsome asserts parallel religious discrimination and retaliation claims under Title VII and the FCRA.  See generally Complaint.  "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones."  See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010) (internal citation omitted); Gray v. City of Jacksonville, Fla., 492 F. App'x 1, 3 (11th Cir. 2012); Burstein v. Emtel, Inc., 137 F. App'x 205, 208 n.7 (11th Cir. 2005).

[11]    Title VII proscribes two forms of discrimination: disparate treatment (or intentional discrimination) and disparate impact.  See Abercrombie, 135 S. Ct. at 2032.  Newsome has not alleged disparate impact discrimination, which involves facially neutral employment practices which have significant adverse effects on protected groups, the evidence of which usually focuses upon statistical disparities rather than specific incidents.  See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807-08 (11th Cir. 2010).  Here, Newsome's religious discrimination claim is premised on intentional discrimination; she contends that Dollar General terminated her employment because of her religious practice.  See Reeves, 594 F.3d at 807.

of her religious practice.  See Response at 10; Newsome Dep. at 83.[12]  As to the third

element, neither party contends that Newsome was terminated for failing to show up for

work on Sundays as scheduled.  Nevertheless, if Dollar General terminated Newsome's

employment to avoid providing her with a religious accommodation, then such action could

still constitute a violation of Title VII.  See Abercrombie, 135 S. Ct. at 2032-33.[13]

Significantly, it is Newsome's burden to prove that her religious practice, or the desire to

avoid accommodating that practice, was a motivating factor in Dollar General's decision to

terminate her.  See id. at 2032 n.2 (explaining that it is the plaintiff's burden to prove that

an adverse employment action was because of her religious practice).  If a plaintiff is able

to establish a prima facie case, the burden shifts to the defendant "to 'demonstrate[] that

he is unable to reasonably accommodate to an employee's . . . religious observance or

practice without undue hardship on the conduct of the employer's business.'"  See

Morrissette-Brown, 506 F.3d at 1321 (quoting 42 U.S.C. § 2000e(j)).

---

[12]     Dollar General argues that Newsome fails to present evidence that her religious beliefs actually conflicted with an employment requirement.  See Response at 12-13.  In support, Dollar General cites evidence that Newsome was rarely scheduled to work earlier than 4:00 p.m. on Sundays and was typically able to attend church and work the 4:00 p.m. shift without conflict.  See Newsome Dep. at 86-89.  The Court need not address this argument because Newsome is unable to establish the third element of her prima facie case.  As such, the Court will assume without deciding that Newsome has established the first two elements.

[13]     Notably, in Walker v. Indian River Transp. Co., No. 8:15-cv-2246-T-27TGW, 2017 WL 388921 (M.D. Fla. Jan. 27, 2017), the district court observed that in light of Abercrombie, the aforementioned elements may require modification.  See Walker, 2017 WL 388921, at *3.  Specifically, as relevant to this action, the court reasoned that "the third element is more appropriately stated as: the employer made the plaintiff's religious practice a factor in an adverse employment decision.  In other words, the employer may not take adverse action with the motive of avoiding the need for accommodating a religious practice."  See Walker, 2017 WL 388921, at *3 (internal citation omitted) (citing Abercrombie, 135 S. Ct. at 2032).  Although the Eleventh Circuit has reiterated the aforementioned elements in unpublished decisions subsequent to Abercrombie, see Walker, __ F. App'x __, 2018 WL 3602926, at *4 (11th Cir. July 27, 2018) and Patterson v. Walgreen Co., 727 F. App'x 581, 585 (11th Cir. 2018), it has not discussed the impact of Abercrombie in any published decision.

In this case, Newsome relies on circumstantial evidence to prove Dollar General's discriminatory intent,[14] and as such her claim is subject to the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1237 (11th Cir. 2016) (citing Vessels v. Atlanta Independent Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005)).[15] When relying on the McDonnell Douglas framework to support a claim of discrimination, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. A plaintiff establishes a prima facie case of discrimination under Title VII by showing that she was: "(1) a member of a protected class; (2) subjected to an adverse employment action, (3) treated less favorably than similarly situated employees outside of [her] class, and (4) qualified to do the job." Walker v. Indian River Transport Co., __ F. App'x __, 2018 WL 3602926, at *6 (11th Cir. July 27, 2018) (citing McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008)); see also Holifield, 115 F.3d at 1562. "To make a comparison of the plaintiff's treatment to

---

[14]    A plaintiff may "present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude." Hill v. Metro. Atlanta Rapid Transit Auth., 841 F.2d 1533, 1539 (11th Cir. 1988), amended on reh'g on different grounds, 848 F.2d 1522 (11th Cir. 1988). "Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption.'" Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (citation omitted). However, "only the most blatant remarks, whose intent could be nothing other than to discriminate" will constitute direct evidence of discrimination. Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). Newsome does not argue that she has any direct evidence of discriminatory intent. See Response at 7-9.

[15]    The Court notes that at no point does Newsome argue that Dollar General was motivated by both a legitimate and an impermissible reason in deciding to terminate her employment. See Response at 9 ("Plaintiff was subjected to harassment and discipline by Tillerson because of her requests to have Sundays off for religious reasons."); id. at 10 ("Plaintiff was terminated because she made complaints that Tillerson was not allowing her to take Sundays off."); id. at 13 ("Plaintiff was then fired on a contrived allegation."). Indeed, Plaintiff asserts that this case is "governed by" the McDonnell Douglas framework, see Response at 7, which applies to single-motive cases. See Quigg, 814 F.3d at 1238 n.7. Accordingly, the Court does not analyze this case under the mixed-motive framework set forth in Quigg. See Williams v. Fla. Atl. Univ., 728 F. App'x 996, 999 (11th Cir. 2018) (explaining that although a plaintiff is not required to plead a "mixed-motive" theory, she is "required to argue that her case involved mixed-motives '[a]t some point in the proceedings'" to warrant consideration of this theory); White v. Winn Dixie, __ F. App'x __, 2018 WL 3343224, at *6 n.2 (11th Cir. 2018).

that of [an employee outside plaintiff's protected class], the plaintiff must show that [she] and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d at 1562. If a plaintiff cannot identify a similarly situated comparator who was treated more favorably than herself, "summary judgment is appropriate where no other evidence of discrimination is present." Id.

If the plaintiff presents a prima facie case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," and the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); Alvarez, 610 F.3d at 1264. If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination and was not the "true reason for the employment decision." Burdine, 450 U.S. at 256; Alvarez, 610 F.3d at 1264; Holifield, 115 F.3d at 1565 ("[T]he plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." (citing McDonnell Douglas, 411 U.S. at 804)). A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. "Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against her." Alvarez, 610 F.3d at 1264.

Although acknowledging that the McDonnell Douglas framework applies, see Response at 7, Newsome appears to concede that she cannot satisfy her prima facie

burden because she is unable to identify any comparators, id. at 8-9. Nonetheless, Newsome contends that summary judgment is inappropriate because she has otherwise presented sufficient circumstantial evidence to establish a triable issue regarding Dollar General's discriminatory intent. See id. Indeed, the Eleventh Circuit has long recognized that the McDonnell Douglas framework is not the only means of proving a case of discrimination. See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). Even without comparators, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" Id. (internal footnote omitted) (quoting Silverman v. Bd. of Educ., 637 F.3d 729, 733 (7th Cir. 2011)).

### B. Retaliation

Under Title VII an employer is also prohibited from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). As with a substantive religious discrimination claim, if an employer articulates legitimate reasons for its actions, a plaintiff must then "'show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct.'" See McCann, 526 F.3d at 1375 (quoting Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d

1056, 1059 (11th Cir. 1999)).  To establish pretext, a plaintiff must demonstrate "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)).

## V.    Discussion

Newsome's religious discrimination claim is premised on her contention that she was terminated "because she made complaints that Tillerson was not allowing her to take Sundays off." See Response at 10.[16]  As this is the same theory on which she premises her retaliation claim, the Court will consider these claims together.  For the reasons set forth below, Newsome fails to present evidence from which a reasonable juror could conclude that her requests for Sundays off or her complaints about not receiving Sundays off motivated Dollar General's decision to terminate her employment.

Newsome contends that she can establish a causal connection between her complaints and her termination because: (1) another employee had been told, prior to

---

[16]    In her Response, Newsome appears to argue that she also suffered adverse employment actions in the form of "increased scrutiny, discipline, [and] additional and less desirable duties" due to her requests to have Sundays off for religious reasons.  See Response at 8-9.  The Complaint does not include any factual allegations of such conduct, and as such, Newsome cannot raise these claims now.  See Complaint ¶¶ 6-11; see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Regardless, these actions plainly do not rise to the level of an adverse employment action for purposes of a Title VII discrimination claim.  See Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir. 2001); Grimsley v. Marshalls of MA, Inc., 284 F. App'x 604, 608-09 (11th Cir. 2008) (finding occasional increase in workload and sporadic assignment of tasks outside job description insufficient); Wallace v. Ga. Dep't of Transp., 212 F. App'x 799, 801 (11th Cir. 2006) (finding written reprimand insufficient absent any evidence of a tangible harm in the form of lost pay or benefits); Harbuck v. Teets, 152 F. App'x 846, 847-48 (11th Cir. 2005) (finding "heightened scrutiny," among other things, did not constitute an adverse employment action).  Although the standard is an objective one, it bears noting that Newsome herself does not appear to view Tillerson's actions as "serious and material changes" in the conditions of her employment as she refers to them as "little icky picky things" throughout her deposition.  See Newsome Dep. at 63, 78, 98.

Newsome's misconduct, that "they were planning to terminate [Newsome] as soon as they could train a new key holder," (2) after Newsome complained to the ERC Tillerson began nitpicking her work, and (3) she was terminated only two months after her call.  See Response at 9, 13-24.  Specifically, Newsome relies on the testimony of Samantha Clay, who worked as a cashier and stocker at Dollar General for three or four months, leaving in January or February of 2015.  See Clay Dep. at 5-6, 15.  According to Clay, Strickland was training Clay to be a keyholder and told her that someone might leave, and stated that "'[w]e going to get rid of [Newsome.]'"  See Clay Dep. at 13.[17]  Clay did not testify as to when that conversation occurred, nor does Clay know why Dollar General planned to terminate Newsome's employment.  According to Newsome, this evidence establishes that Tillerson planned to terminate her long before she violated closing procedures.  See Response at 13.   However, because Clay left her employment with Dollar General in January or February of 2015, her conversation with Strickland also would have occurred before Newsome called the ERC to complain about Tillerson's refusal to give her Sundays off.   Likewise, this incident also would have pre-dated Newsome's conversation with Tillerson in mid-March or early April about alternating Sundays so Newsome could attend church.  See Newsome Dep. at 57, 64.  As such, this evidence actually undermines Newsome's contention that Tillerson wanted to fire her based on discriminatory or retaliatory reasons.[18]  Nevertheless, because, as discussed below, Dollar General has come forward with a non-discriminatory reason for Newsome's termination, the Court will

---

[17] Strickland denies that Tillerson ever talked to her about firing Newsome prior to Newsome's termination or that Tillerson ever expressed to her that she did not like Newsome.  See Strickland Dep. at 9.

[18] While Tillerson previously may have known that Newsome did not want to work on Sundays based on her job application, Newsome fails to cite to any evidence that Tillerson knew or suspected of any religious reasons for Newsome desiring Sunday off prior to March or April of 2015.

assume without deciding that the two-month span between Newsome's complaint to the ERC and her termination is sufficient to satisfy her <u>prima facie</u> burden and focus on the question of pretext. <u>Compare</u> <u>Robinson v. LaFarge N. Am., Inc.</u>, 240 F. App'x 824, 829 (11th Cir. 2007) ("[Plaintiff] established a prima facie case, as the demotion occurred only about two months after he filed a grievance.") <u>with</u> <u>Williams v. Waste Mgmt., Inc.</u>, 411 F. App'x 226, 229-30 (11th Cir. 2011) (finding that plaintiff failed to establish <u>prima facie</u> case of retaliation because a two-month gap was insufficiently proximate to establish causation).

Dollar General offers a legitimate, non-discriminatory reason for terminating Newsome. Specifically, Dollar General presents evidence that it terminated Newsome's employment because she failed to comply with proper closing procedures—she counted the money with the door open and the cashier sitting in the office and failed to conduct bag checks. <u>See</u> Motion, Ex. 2 at 9-10. Newsome does not deny that she engaged in this misconduct, nor does she identify any other key holder who committed similar acts and was not terminated. Nonetheless, Newsome argues that she has presented sufficient evidence of pretext because: (1) Tillerson also failed to follow proper closing procedures and was not terminated, and (2) Newsome followed the closing procedures as taught to her by Tillerson. <u>See</u> Response at 15. Neither argument has merit.

Tillerson's alleged failure to follow closing procedures is unhelpful to Newsome because Tillerson's purported misconduct is materially distinct from Newsome's. Significantly, "'Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules.'" <u>See</u> <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1369 (11th Cir. 1999) (quoting <u>Nix v. WLCY Radio/Rahall Comm'ns</u>, 738 F.2d 1181, 1186 (11th Cir. 1984)). Indeed, this Court does "not sit as a super-

personnel department that reexamines an entity's business decisions." See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). Here, Newsome argues that Tillerson failed to comply with closing procedures based on evidence that Tillerson failed to conduct bag checks.[19] See Response at 3; Strickland Dep. at 14. While a failure to present bags was noted at the conclusion of Newsome's termination form, the primary violation recounted on the form is Newsome's act of counting the store's money at closing with the door open and the cashier sitting in the office. See Motion, Ex. 2 at 9. In addition, the form notes that Newsome had previously received a written counseling on her failure to comply with the required closing procedures. Id. Newsome offers no evidence that Tillerson engaged in similar misconduct concerning money-handling procedures, much less that she repeated this misconduct after being counseled on the proper procedures. Dollar General reasonably could view Tillerson's purported failure to perform bag checks as materially distinct from Newsome's failure to properly handle the store's cash, and as such, Tillerson cannot serve as a valid comparator for purposes of establishing pretext. See Rioux v. City of Atlanta, 520 F.3d 1269, 1280 (11th Cir. 2008) (explaining that the "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employer's reasonable decisions"); Maniccia, 171 F.3d at 1368-69.

---

[19] Notably, Tillerson was the store manager, and thus held a different rank than Newsome, who was a "Lead Sales Associate." Nonetheless, differences in rank are not dispositive if the employees are subject to the same employment policies. See Lathem v. Dep't of Children & Youth Servs., 172 F.3d 786, 793 (11th Cir. 1999) ("The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies."). It does appear that Tillerson was subject to the same closing policies based on Newsome's testimony that, at the time of the February counseling, Tillerson told her that "she [Tillerson] basically had got wrote up for not following Dollar General's policy and procedures, and that basically how I was trained was wrong, and these are the things that basically need to get changed." See Newsome Dep. at 36. Nonetheless, although Strickland testified that Tillerson did not perform bag checks, her knowledge of this dates to a time when Strickland worked with Tillerson before Strickland became assistant manager, see Strickland Dep. at 14, Newsome offers no evidence that Tillerson continued in this misconduct after the February counseling.

Additionally, Newsome's contention that she was merely following the closing procedures as were taught to her by Tillerson is not supported by the evidence. While it may be that Tillerson initially trained Newsome improperly, it is undisputed that in February, Tillerson instructed Newsome that: (1) no one is permitted in the office the last hour the store is open, (2) when she counts the cash the office door is to be closed and locked, and (3) she must present her bags when leaving the store. <u>See</u> Motion, Ex. 2 at 4; Newsome Dep. at 36-37 ("She basically told me the door have to be closed while I count money, and that the double doors have to be locked before counting the money now."). When counseled in February, the form specifically warned Newsome that failure to comply with these procedures could lead to termination. <u>See</u> Motion, Ex. 2 at 4. Accordingly, Newsome's termination for counting the money with the office door open and the cashier present is entirely consistent with the instructions she received in February, regardless of any prior erroneous training. Thus, Newsome has failed to show any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Dollar General's] proffered legitimate reasons for its actions [such] that a reasonable factfinder could find them unworthy of credence." <u>Alvarez</u>, 610 F.3d at 1265 (internal quotations omitted).

To the extent Newsome contends that she has otherwise established a "convincing mosaic of circumstantial evidence," the Court is not persuaded. Specifically, Newsome relies on the following additional evidence to establish that the real reason for her termination was discrimination or retaliation: she was "subjected to harassment and discipline by Tillerson because of her requests to have Sundays off for religious reasons,"[20]

---

[20] Although counsel for Plaintiff fails to cite to any evidence in support of this contention, presumably, this argument refers to the incident when Tillerson disciplined Newsome for failing to complete the "go-backs" and improperly using the logbook. However, the counseling regarding the daily logbook occurred with all the employees, not just Newsome, and thus is not indicative of any improper motive. <u>See</u> Newsome Dep. at 43-

and Tillerson remarked to other Dollar General employees that she did not believe that [Newsome] was actually religious.[21]  See Response at 9.  One off-hand remark, without any context, and Newsome's subjective impression that Tillerson was picking on her simply do not constitute a mosaic much less a "convincing mosaic" sufficient to permit an inference of discrimination.[22]  See Beckles v. Fed. Express Corp., 489 F. App'x 380, 384-85 (11th Cir. 2012); see also Truesdale v. CSX Transp., No. 3:15-cv-1373-J-32PDB, 2017 WL 4182327, at *5 (M.D. Fla. Sept. 21, 2017) (citing Connelly v. Metro. Atl. Rapid Transit Auth., 764 F.3d 1358, 1364-65 (11th Cir. 2014) (describing the compelling evidence of discrimination present in Smith and distinguishing the plaintiff's "considerably weaker" evidence))).  Based on the record before this Court, no reasonable juror could find that Dollar General more likely than not terminated Newsome for a discriminatory or retaliatory

---

44 ("Well, you know, [Tillerson] talked to whoever was there then, and whoever came in, I guess she talked to.  Everybody basically had got talked to about this, because I think everybody got wrote up for this.").  As for the "go-back" incident, it is entirely unclear from the record when this occurred such that it is difficult to connect this incident to Newsome's requests for Sundays off or complaints about Tillerson.  Indeed, the only evidence that Tillerson's actions in this regard were connected to Newsome's request for Sundays off is Newsome's subjective perception of them as such.  See Holifield, 115 F.3d at 1564 ("While [plaintiff] has testified that he felt discriminated against, his opinion, without more, is not enough to establish a prima facie case of race discrimination.").

21    Specifically, former employee Samantha Clay testified that she overheard a conversation between Tillerson and Strickland about the Kingdom Hall of Jehovah's Witnesses during which Tillerson expressed that "[s]he didn't think it was true."  See Clay Dep. at 10.  Without any information as to when this conversation occurred, or the context of Tillerson's statement, the Court finds this statement to be of little, if any, probative value.

22    Remarkably, Newsome fails to cite to her own testimony that Tillerson once told her that if she was unable to work on Sundays then she would have to either terminate her or demote her.  See generally Newsome Dep. at 55-56, 76.  Because Newsome failed to cite to this evidence, the Court is not required to consider it.  See Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  Nonetheless, even considering this testimony, the Court is not convinced that it is sufficient to establish a material issue of fact as to the reason for her termination.  Although unclear when exactly this conversation occurred, Tillerson made this statement to Newsome in the context of explaining that the Dollar General was short-staffed, and Newsome appears to have continued working on Sundays thereafter.  See Newsome Dep. at 55-56, 76.  It is unclear whether she ever complained about working on Sundays again after this conversation.  As such, the connection between this conversation and Tillerson's subsequent decision to terminate Newsome is too tenuous to satisfy Newsome's burden of demonstrating an impermissible motive, especially given that Newsome herself does not rely on this evidence.

reason as opposed to the entirely legitimate reason that after being warned that failure to follow closing procedures could result in termination, Newsome again failed to follow money handling procedures for store closing. Accordingly, Dollar General's Motion is due to be granted.

In light of the foregoing, it is

**ORDERED**:

1. Defendant's Motion to Strike Portions of Plaintiff's Statement of Disputed Facts (Doc. 24) is **DENIED**.

2. Defendant Dolgencorp, LLC's Motion for Summary Judgment, Statement of Undisputed Material Facts, and Memorandum of Law in Support (Doc. 18) is **GRANTED**.

3. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant Dolgencorp, LLC d/b/a Dollar General and against Plaintiff Georgena Newsome.

4. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 5th day of November, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties